UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-cv-20864-FAM

NATALIE SUESCAN,
As the natural parent of
EMILY ELISE HERNANDEZ,

    Plaintiff,

v.

DURACELL, INC., a/k/a
THE DURACELL COMPANY
And WALGREEN Co., a foreign
profit corporation,

    Defendants.
_____/

### REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR SPOLIATION-CAUSED SANCTIONS

Defendants Duracell, Inc. and Walgreen Co. filed [ECF No. 26] a motion for sanctions against Plaintiff Natalie Suescan because of the alleged spoliation of purported critical evidence. According to Defendants, Plaintiff discarded five of the six batteries used in a Casio keyboard at the time her minor daughter (Emily Elise Hernandez) was supposedly injured by a chemical burn caused by an allegedly defective battery in the keyboard. [ECF No. 26].

Defendants contend that the battery in question likely vented because of Plaintiff's

misuse of the battery by incorrectly using it with *other* batteries of different types, strengths, or ages. *Id*. Because the five batteries were discarded, Defendants say, they are prevented from confirming Plaintiff's misuse of the subject battery. *Id*. Defendants want the lawsuit dismissed with prejudice as a sanction for the spoliation of the five batteries. *Id*. Failing that, Defendants ask for an adverse inference/rebuttable presumption jury instruction. Plaintiff filed an opposition Response [ECF No. 30], and Defendants filed a Reply [ECF No. 31].

Plaintiff's counsel received a letter (from a third-party claims administrator for Duracell, retained after Plaintiff's counsel sent a claim letter) demanding that all batteries being used in the keyboard at the time of the incident be forwarded to Duracell for testing. [ECF No. 31]. But the record evidence does not clearly and cleanly reveal whether Plaintiff's counsel received this letter *before* or *after* the five other batteries were discarded.

Given this uncertainty, the Undersigned respectfully recommends that United States District Judge Federico Moreno, who referred the motion to the Undersigned for a Report and Recommendation [ECF No. 29], permit the parties to submit evidence on the timing of the warning letter and to ask the jury if the "forward-all-batteries" letter was received *before* or *after* the batteries were discarded.

If the batteries were discarded after the letter was received, then the Court should dismiss the case with prejudice. On the other hand, if the batteries were discarded before the letter, then the Court should not impose sanctions.

Factual and Procedural Background

On January 30, 2016, Suescan and her husband, Eladio Hernandez ("Hernandez"), drove to the home of Suescan's mother, Letty Gonzalez ("Gonzalez"). Thereafter, Hernandez says, he retrieved numerous AA batteries from a drawer in Gonzalez's home and inserted them into Emily's Casio SA-76 keyboard piano.

Suescan, Hernandez, Emily, and Emily's sister, Sabrina, then drove to the Everglades for the day. Throughout the trip, Emily played with the keyboard in the backseat. After about six hours, Emily complained of itching on her leg. When the family returned home, Suescan looked at Emily's leg under her leggings and noticed a wound.

Hernandez testified that he subsequently removed *all* six of the batteries from the keyboard and placed them in a Ziploc bag. However, at some point thereafter, only one battery was maintained, and the remaining five batteries were discarded.

On March 3, 2016, Plaintiff's attorney wrote a demand letter to Duracell, advising that Emily had been injured due to battery leakage. [ECF No. 31-1]. The letter put Duracell on notice of the claim and asked that it be forwarded to the appropriate department.

In response to this initial claim letter, Duracell's third-party claims administrator sent a March 28, 2016 letter to Plaintiff's counsel. [ECF No. 31-2]. This letter explained that Duracell would investigate. The letter said, "it is critical that you provide the product in order to properly evaluate this claim." *Id*. The letter also explained that "[i]t is vital that

3

the integrity of the product is maintained and that our technical personnel analyze the product." *Id*.

After noting that "the batteries and device are subjected to testing and subsequently returned," the letter provided the following instruction: "Please send the device and **all** of the batteries installed in the device at the time of this incident" to a specific person at Duracell's office in Connecticut. *Id*. (emphasis added).

Almost two years later, on January 19, 2018, Plaintiff's counsel sent a letter enclosing the Casio keyboard, the keyboard battery cover, *one* Duracell AA alkaline battery and one pair of child's pants, with the note "acid burn on right leg." [ECF No. 31-3].

In a February 22, 2018 email, Plaintiff's attorney advised Duracell that she and her clients did not have the other batteries. She gave the following explanation:

> The battery included in the demand was the only one that leaked the battery acid. I don't think it was foreseeable for the client to assume to keep all the other batteries that were not defective. I'm sure your engineers can match the battery acid from the actual battery, to the piano/toy, to the leggings the child was wearing.

[ECF No. 31-4].

Both Plaintiff's fire and explosion expert and Defendants' battery expert opined that the only way to confirm that all batteries inserted into the keyboard were of the same type and strength would be to perform an inspection of all of the batteries that were being used at the time of the incident.

4

Specifically, Plaintiff's expert, Richard Meier, testified to the following:

Q: [D]id you have an opportunity to inspect the other five batteries that accompanied the subject battery?

A: Unfortunately, I only received the one incident battery. I was told that the other five would have been thrown out. I believe that's also verified by the mother's deposition.

Q: Okay. If the other five batteries were available to be inspected, is that something you would want to do?

A: Oh, absolutely. …[counsel had a discussion regarding an amber alert that occurred during the questioning]

Q: All right. And why would you want to inspect the other five batteries that would accompany the subject battery?

A: Well, I would want to inspect the other five to assure that they were, A, both the same time, same make, and same vintage as the incident battery. That is one of the potential causes of battery failure is to mix and match your batteries.

Q: And how can that cause battery failure?

A: Well, if you're using different types of batteries, the voltages are not always exactly the same. The resistance of the batteries themselves are not always exactly the same. And you can have a situation where undue load is placed on one battery as compared to another.

Q: And what happens in that situation?

A: You may end up with battery failure.

[ECF No. 26-3].

Mr. Hernandez testified in deposition that the subject battery was retrieved from an already opened package of batteries that was in a drawer in the home of Suescan's

mother/Emily's grandmother, Letty Gonzalez. However, Ms. Gonzalez did not recall where she purchased the package of batteries, when they were purchased, or when the package was initially opened.

While Plaintiff is alleging the subject battery came from a package purchased by Ms. Gonzalez at Walgreens, Defendants contend that the subject battery is an "Original Equipment Accessory" (hereinafter "OEA") battery, meaning the subject battery was sold to a merchandiser and <u>accompanied the sale of a product</u>. Therefore, Defendants argue, the battery could not possibly have been sold in a package of batteries at Walgreens (as alleged by Plaintiff and Mr. Hernandez).

Importantly, because the subject battery could not have been sold in the package from which Mr. Hernandez testified he removed the batteries, Defendants argue, it is likely the subject battery was placed in the package after the package had been opened and was mixed with batteries of different types, ages and strengths. However, because the other batteries being used in conjunction with the subject battery were discarded, Defendants are unable to prove that the subject battery vented due to misuse in mixing batteries of various ages and strengths.

The Duracell Quality Assurance Senior Engineer who inspected the one battery submitted by Plaintiff's counsel submitted an affidavit in which she advised that her inspection and testing demonstrated that "the allegedly defective battery exhibited signs of an overdischarge condition." [ECF No. 31-5]. Her affidavit further explained that

6

"some possible cause of an overcharge condition are (1) old or previously used batteries being used in conjunction with new batteries, and (2) different brands or types of batteries being used together." *Id*.

Duracell's Failure Analysis report explained that the submitted battery displays "Original Equipment Accessory," which "indicates that the battery would have been sold to an equipment manufacturer." [ECF No. 26-4]. The report then explained that "this device does not come with OEA batteries." *Id*.

Applicable Legal Principles and Analysis

"Spoliation is a destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Gaff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (explaining that spoliation is "the destruction of evidence or the significant and meaningful alteration of a document or instrument") (internal quotation marks omitted).

Because spoliation sanctions constitute an evidentiary matter, federal law governs their imposition. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *see Martinez v. Brink's, Inc.*, 171 F. App'x 263, 268 n.7 (11th Cir. 2006) (holding that federal law governs the imposition of spoliation sanctions in a case premised on federal question

jurisdiction); *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 513-514 (S.D. Fla. 2015) (same).

A district court has "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury*, 427 F.3d at 944.

In this Circuit, sanctions for spoliation of evidence may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a resumption against the spoliator." *Id*. at 945. "The adverse inference makes a finding or imposes a rebuttable presumption that the missing evidence would have been unfavorable to the party engaging in the misconduct." *Fed. Trade Comm'n v. First Universal Lending, LLC*, 773 F. Supp. 2d 1332, 1352 (S.D. Fla. 2011).

> To establish spoliation, the party seeking sanctions must prove several things: first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense.

*Doe v. Miami-Dade County*, 797 F. Supp. 2d 1296, 1303 (S.D. Fla. 2011) *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 280 F.R.D. 694, 696 (S.D. Fla. 2012).

A jury instruction on spoliation of evidence is required "only when the absence of that evidence is predicated on bad faith." *Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009).

> [W]here no direct evidence of bad intent exists, in this Circuit, bad faith may be found on circumstantial evidence where all of the following hallmarks

8

>are present: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Fed. Trade Comm'n*, 773 Supp. 2d at 1353-54; *see also Boston Boat III, L.L.C.,* 310 F.R.D. at 520.

The Eleventh Circuit's decision in *Flury* involved a plaintiff who sought enhanced injuries that he claimed to have suffered due to a manufacturing defect in his vehicle's airbag system. 427 F.3d at 940. A jury awarded the plaintiff $250,000 in enhanced injury damages. *Id*. at 943. Defendant appealed on several grounds, including that the district court failed to impose meaningful sanctions for spoliation of the subject vehicle. *Id*. The plaintiff failed to preserve the allegedly defective vehicle and allowed the vehicle to be sold for salvage, despite a request from the defendant for the vehicle's location. *Id*. The district court ordered that an adverse inference instruction would be an adequate remedy to cure the prejudice to the defendant. *Id*. at 942.

In reversing the district court for failure to impose meaningful sanctions for the plaintiff's spoliation of critical evidence, the Eleventh Circuit found that the adverse inference instruction was insufficient to cure the prejudice. *Id*. at 946. "We cannot imagine a case in which the evidence destroyed would prove more critical. The resulting prejudice to defendant is incurable by any sanction other than dismissal." *Id*. at 947. In so ruling,

9

the Eleventh Circuit stated that the case "hinges upon the significance of the evidence destroyed, and upon the extreme prejudice the defendant suffered as a result." *Id*. at 943.

## The Batteries Existed.

It is undisputed that the keyboard required six AA batteries and that five other batteries were being used in the keyboard along with the allegedly defective battery. Mr. Hernandez testified that he replaced all the AA batteries in Emily's Casio SA-76 keyboard piano with batteries he obtained from a drawer in Gonzalez's home. As such, it is undisputed that other batteries accompanied the subject battery in the keyboard at the time of the accident.

## Did Plaintiff Have a Duty to Preserve *All* the Batteries?

The law clearly mandates that "[a] party has an obligation to retain relevant documents [or evidence] when litigation is reasonably anticipated." *Simon Prop. Group, Inc. v. Lauria*, No. 6:11-cv-01598- Orl-31KRS, 2012 WL 6859404, at *6 (M.D. Fla. 2012); *see also Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126-127 (S.D. Fla. 1987). "Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information [and any other evidence] which is relevant to the dispute." *Point Blank Solutions*, 2011 WL 1456029, at *11.

Here, all the batteries were maintained immediately after the accident. Mr. Hernandez testified that he removed all the batteries from the keyboard and placed all the batteries in a Ziploc bag. However, at some point thereafter, all the batteries except

10

the allegedly defective battery were discarded. Plaintiff and her husband learned of the injury to their daughter's leg at the same time they maintained the batteries.

Defendants contend that Plaintiff had a duty to preserve *all* the batteries in order to afford Defendants a chance to inspect all of the batteries.

But that is far from clear.

The duty to preserve all the batteries surely arose once Plaintiff received the third-party administrator's letter instructing Plaintiff's counsel to send all the batteries in the device to Duracell for inspection. But the Undersigned is not convinced that a lay person would otherwise be under a duty to preserve all batteries when only one of six batteries showed signs of damage.

To be sure, Plaintiff clearly knew that she intended to make a claim against the Defendants and initially kept all the batteries. But the mere fact that the undamaged batteries were later discarded does not necessarily mean that Plaintiff was knowingly violating a duty to preserve all batteries. Likewise, discarding the batteries does not necessarily evince bad faith (at least before receiving the letter demanding the return of all batteries).

Therefore, determining whether Defendants met this duty-to-preserve element hinges on whether the five other batteries were discarded after Plaintiff's counsel received the letter directing Plaintiff to send all batteries to Duracell. That critical, fact-

11

based answer is incapable of being resolved from the existing record, so the Undersigned concludes that a determination **must await trial.**

### The Spoliated Batteries are Crucial to Establishing a *Prima Facie* Defense

Liability here depends on whether the allegedly defective battery vented due to a manufacturing defect or due to misuse by Plaintiff, including the insertion of batteries of different types, ages, and strengths, which would trigger the battery's venting mechanism.

Both liability experts agree that they would need to perform testing on the five discarded batteries to determine whether the batteries were different of ages, strengths, or models. Even Plaintiff's liability expert testified that a battery could fail if used in conjunction with batteries of different ages and strengths. He also said that he would have wanted to inspect all the batteries if they were available.

Mr. Meier additionally testified that the venting mechanism is a safety feature so that the build-up of internal pressure does not rupture the battery.

During his deposition, he read the warning label as follows: "caution may explode or leak and cause burn injury if recharged, disposed of in fire, mixed with different battery types, inserted backwards, or disassembled. Replace all used batteries at the same time. Keep in the original package until use . . . ." [ECF No. 26-3].

Therefore, testing on the discarded batteries was the only way Defendants could make a *prima facie* defense in this matter.

### Did Plaintiff Discard the Batteries in Bad Faith?

Determining whether Plaintiff acted in bad faith when she discarded the five batteries is linked to the timing of the letter requiring Plaintiff to send all the batteries to Defendant Duracell. The same perspective discussed above applies here: If the letter was received before the batteries were discarded, then bad faith exists. On the other hand, if the batteries were discarded before the letter was received, then there is no bad faith.

Because the Undersigned cannot conclusively determine the bad faith issue now, the fact-based assessment must await trial.

### Appropriate Sanction for Spoliation of Batteries

Like in *Flury*, the only sanction that can level the playing field and reverse the extreme prejudice to Defendants *if* Plaintiff engaged in bad faith spoliation is dismissing Plaintiff's lawsuit with prejudice. *Flury*, 427 F.3d at 943, 947.

But, as explained above, it is the "if" factor which prevents a decision now.

The Undersigned views this fact-based determination to be a quintessential jury question. Therefore, the Undersigned **respectfully recommends** that Judge Moreno give jury instructions and a verdict form with a special interrogatory: were the five batteries not sent to Duracell discarded before or after Plaintiff's counsel received the March 28, 2016 letter? If the jury's answer is "after," then the Undersigned respectfully recommends that Judge Moreno dismiss the case with prejudice. But if the jury's answer is "before," then the Undersigned respectfully recommends that Judge Moreno impose no sanctions

and that no consequences ensue – because there was no bad faith spoliation. *Wandner v. American Airlines*, 79 F.Supp.3d 1285 (S.D. Fla. 2015) (denying spoliation sanctions motion because the County, which badly bungled a request to preserve surveillance video, did not act in bad faith when it permitted the videos to be destroyed); *see also Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 16-cv-23303, 2017 WL 7732869, at *6 (S.D. Fla. July 24, 2017) (denying spoliation-based motion to preclude liability evidence after concluding that movant did not establish bad faith because party's failure to preserve video footage was, "at worst," "negligent, misguided and irresponsible"); *cf. St. Elien v. All County Environmental Services. Inc.*, No. 19-civ-60630, 2020 WL 1690066, at *2 (S.D. Fla. March 3, 2020) (denying motion after concluding that plaintiff "wholly failed" to meet her burden and noting that she failed to offer, "beyond conjecture and the opinion of her counsel," any evidence of bad faith).

<u>Objections</u>

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and Recommendations and shall bar the parties from attacking on appeal any factual or legal conclusions contained in this Report and Recommendations

and to which they did not object, except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); CTA11 Rule 3-1.

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 14, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico Moreno
All counsel of record

15